UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DOCKET NOS. 3:03CR182(SRU) |
| | : | 3:03CR253(SRU) |
| v. | : | |
| | : | |
| SALVATORE J. CARTELLI, JR. | : | FEBRUARY 25, 2005 |

**GOVERNMENT'S SENTENCING MEMORANDUM**

**Background**

On June 25, 2003, a grand jury returned an indictment charging the defendant, Salvatore

J. Cartelli, Jr., and his codefendant, Albert D. LaTouche, with nine counts of mail fraud, in

violation of 18 U.S.C. § 1341.  The indictment alleged that, from March 1997 through July 2000,

the defendants engaged in a scheme to defraud forty-six investors, individually or jointly with

their spouses, of $757,000.  The scheme involved making false representations to investors in

Global Telecom Services, LLC, doing business as Medical Disposal Devices, either to encourage

them to invest or to lull those who had invested into believing that their investments were safe.

Trial began on September 7, 2004 and concluded on October 8, 2004 with a jury verdict of guilty

as to each defendant on each count in the indictment.  On October 12, 2004, the jury returned an

interrogatory finding that forty-six investors lost a total of $757,000.  Cartelli was primarily

responsible for the dissipation of the investors' money, as set forth in paragraph 28 of the

presentence report.

Within approximately three months of the end of the Medical Disposal Device scheme in

July 2000, Cartelli began fraudulently using five credit card account numbers issued to Hussein

Ashiry.  During the period from November 1, 2000 through February 13, 2001, Cartelli made

charges totaling $35,000 to accounts that Ashiry had with three credit card companies, and to

two that Cartelli had opened in Ashiry's name.

On September 5, 2003, a grand jury returned an indictment charging Cartelli with one

count of credit card fraud in violation of 18 U.S.C. § 1029(a)(5).  Trial began on December 14,

2004 and concluded on December 15, 2004 with a jury verdict of guilty.

**Offense Level and Criminal History Category**

In arriving at the defendant's total offense level, the Probation Office has grouped the

mail fraud and credit card fraud charges into one group of closely related counts pursuant to

U.S.S.G. § 3D1.2(d).  The 1998 guideline for 18 U.S.C. §§ 1341 and 1029 offenses is § 2F1.1,

with a base level of six.  Ten levels have been added because the loss for both cases is more than

$500,000 but less than $800,000 ($757,000 for the section 1341 violations and $34,600 for the

section 1029(a)(5) violation, totaling $791,600).  Finally, two levels have been added because the

offenses involved more than minimal planning.  The result is a total offense level of 18.

Cartelli has no prior convictions, so his criminal history category is I.  With an offense

level of 18 in Criminal History Category I, the defendant's guideline imprisonment range is 27 -

33 months.  The cases have been consolidated for sentencing which is scheduled for March 4,

2005.[1]

---

[1]Under *United States v. Booker*, 125 S. Ct. 738 (2005), the Sentencing Guidelines are no longer mandatory.  However, a district court is required to consider Guidelines ranges in imposing sentence.  *Booker*, 125 S. Ct. at 757.  Recommendation in this memorandum for a departure from the defendant's Guidelines imprisonment range should be read in the context of the Sentencing Guidelines being advisory only.  The Government requests that the Court impose a sentence of imprisonment longer than a criminal history category of I would permit, were the

**Upward Departure**

      A.      **Inadequacy of Defendant's Criminal History Category Based Upon Consolidation of the Cases**

In the Government's view, an upward departure is warranted in this case. The Sentencing Guidelines provide that a defendant's criminal history category is calculated pursuant to U.S.S.G. §§ 4A1.1 and 4A1.2. A horizontal departure to a higher criminal history category is authorized:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes . . . .

U.S.S.G. § 4A1.3. *See United States v. Ashley,* 141 F.3d 63, 69 (2d Cir. 1998)(finding no error in upward departure because "Section 4A1.3 of the Guidelines authorizes such a departure from the prescribed range where a defendant's criminal history category 'significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes'")(quoting U.S.S.G. § 4A1.3); *United States v. Rivers,* 50 F.3d 1126, 1131 (2d Cir. 1995)("We agree with the other circuits that section 4A1.3 manifests the Commission's view that a sentencing judge should exercise discretion whenever the judge concludes that the consequences of the mathematical prior-history calculation, prescribed by sections 4A1.1 and 4A1.2, either underrepresent or overrepresent the seriousness of a defendant's prior record).

A "mathematical prior-history calculation" of a defendant's criminal history category can underrepresent a defendant's prior record in an instance in which cases are grouped under

---

Guidelines still mandatory.

U.S.S.G. § 3D1.2(d) and consolidated for sentencing.

> [I]f a defendant was convicted of a number of serious non-violent
> offenses committed on different occasions, and the resulting
> sentences were treated as related because the cases were consolidated
> sentencing, the assignment of a single set of points may not adequately
> reflect the seriousness of the defendant's criminal history or the
> frequency with which he has committed crimes.  In such circumstances,
> an upward departure may be warranted.

U.S.S.G. § 4A1.2, Application Note 3.  The consolidation of prior cases for sentencing resulting

in a criminal history category that underrepresents a defendant's past criminal behavior or

potential for recidivism, U.S.S.G. § 4A1.3, is a "proper" basis for an upward departure in the

Second Circuit.  *United States v. Bauers*, 47 F.3d 535, 538 (2d Cir. 1995).  *See also United

States v. Connelly,* 156 F.3d 978, 983-84 (9th Cir. 1998)(classifying the consolidation of cases for

sentencing as an encouraged basis for departure).

In *United States v. Bauers,* the Court of Appeals for the Second Circuit acknowledged

that the inadequacy of criminal history category, based on the consolidation of two prior state

convictions, was an acceptable basis for departure.  *Bauers*, 47 F.3d at 538.  "[A] defendant's

past criminal record and background clearly are factors that a sentencing court may rely on in

determining whether an upward departure is warranted."  *Id.*  The Court of Appeals upheld the

district court's upward departure based on the facts that "Bauers' two state convictions were

distinct crimes that were likely consolidated [for sentencing] merely for the expediency of the

state criminal justice system, and that Bauers' record reflects an individual bent on defrauding

the public . . . ."  *Id.* (citing *United States v. Bishop,* 921 F.2d 1068, 1071 (10th Cir. 1991)).  *See

Bishop*, 921 F.2d at 1071("To read into the plain meaning of the statute the inference of the

application note [§ 4A1.2, comment. (n. 3)] that every time a defendant is sentenced at a single

-4-

hearing for multiple convictions those convictions are related would defeat both the intent of the statute and the public policy concerns over haphazard dispensation of justice. *A defendant convicted of multiple unrelated offenses who fortuitously is sentenced for all offenses by one judge at one time would subsequently face less punishment when his points are totaled than another defendant who committed the same crimes but was separately sentenced on successive days or on the same day by different judges. Aside from offending the legislative intent and public policy involved, such a result would be inequitable.*")(emphasis supplied in *Bishop*)(citation omitted).

The district court in *Bauers* had relied upon two prior state cases which had been consolidated for sentencing in departing upward. In the instant case, Cartelli's two federal cases have been consolidated for sentencing. The Second Circuit's rationale in affirming an upward departure in *Bauers* is applicable to the Cartelli sentencing. *See United States v. Maurer*, 76 F. Supp. 2d 353, 361-62 (S.D.N.Y. 1999).

In *Maurer*, the defendant had no convictions prior to the three federal cases that had been consolidated for sentencing, placing him in Criminal History Category I. After reviewing U.S.S.G. § 4A1.2, Application Note 3, the district court departed horizontally to Criminal History Category II. The court found that the defendant had engaged in three different fraudulent schemes, escalating in severity over four years, in which he stole more than half a million dollars. In departing, the court noted that "[t]his is exactly the type of case described by [Application Note 3 of] the Guidelines." *Id*. at 362.

As in *Maurer*, Criminal History Category I does not adequately reflect the seriousness of Cartelli's fraudulent conduct. *See* U.S.S.G. § 4A1.3. The two cases now before this Court

-5-

involved different victims and different crimes which were committed at different times.  The

fraudulent use of Hussein Ashiry's credit cards began after the Medical Disposal Device scheme

had ended.  The two crimes are related only because each involves a monetary loss.  There is no

"'close factual relationship'" between them.  *Bauers*, 47 F.3d at 538 (citation omitted).

Therefore, the Government urges the Court to depart horizontally to Criminal History

Category II in sentencing the defendant.

### B.    Inadequacy of Defendant's Criminal History Category Based Upon Uncharged Criminal Conduct

U.S.S.G. § 4A1.3 sets forth five criteria that a court may consider in departing upward.

> (a)    prior sentence(s) not used in computing the criminal history category (*e.g.*, sentences for foreign and tribal offenses);

> (b)    prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions;

> (c)    prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order;

> (d)    whether the defendant was pending trial or sentencing on another charge at the time of the instant offense;

> (e)    prior similar adult criminal conduct not resulting in a criminal conviction.

*Id.*

Those five factors, however, are not the only factors that may support an upward

departure.  "[A] sentencing court may consider information outside the five express factors of

Section 4A1.3 as a basis for departure as long as the information is reliable."  *United States v.*

*Cox,* 299 F.3d 143, 147 (2d Cir. 2002).  Thus, a district court may base a departure on

"uncharged criminal conduct" as indicative of a propensity for future criminal behavior. *United States v. Gayle,* 389 F.3d 406, 410 (2d Cir. 2004).

As reported in paragraph 66 of the presentence report, the defendant stole three automobiles from people whom he befriended during a time that he vacationed in Vermont.  In 1998, Cartelli agreed to sell Stanley Holton's 1937 Buick for $6,000.  The defendant transported the car from Vermont to Connecticut, and eventually gave Holton $2,000.  Since receiving the money, Holton has tried to contact the defendant on numerous occasions.  He did speak once to Cartelli, who promised to deliver to Holton the balance of the money for the car.  The defendant never did as he promised.  Holton reported the car stolen, and the Manchester, Vermont police determined that the car is registered to an individual residing in New York.

In May 1999, the defendant agreed to sell a Ford Taurus for Laura Chamberlain.  He transported the car from Vermont to, presumably, Connecticut.  For some time thereafter, Cartelli made excuses for not selling the car or not returning it to Chamberlain.  She has not been able to contact the defendant for approximately two years.

Judie Barker met the defendant in 1995.  In November 2002, Cartelli sold to Barker and her husband a 1995 Isuzu, and agreed to sell their Ford Taurus for $3,600 to $4,000.  When the defendant delivered the Isuzu, he brought the Taurus back to Connecticut.  Barker has received only promises or excuses from Cartelli.  He has not returned the car nor has he paid her for it.  She last spoke to the defendant in September 2004.

In addition to the three cars that Cartelli stole from Stanley Holton, Laura Chamberlain and the Barkers, the defendant also stole a car from a bank in Connecticut.  Prior to its failure in October 1991, Connecticut Valley Bank repossessed a 1988 Cadillac Eldorado valued at

approximately $7,500.  After the failure of the bank, the Federal Deposit Insurance Corporation

("FDIC"), acting as its receiver, entered into a consignment contract with the defendant to sell

the car through his dealership, Cartelli's Auto Sales in Portland, Connecticut.

Cartelli never paid the FDIC nor did he return the car.  FDIC account officers visited

Cartelli's Auto Sales in April 1993 and found that the business had been abandoned.  The

account officers did find another repossessed car, a 1982 Corvette, that had been consigned to

Cartelli for sale, which was removed from the premises of Cartelli's Auto Sales.  The defendant

did cooperate in the liquidation of the Corvette in that, after numerous phone calls and a written

request by the FDIC, he provided the title.  However, he never responded to numerous telephone

calls and several certified letters inquiring about the disposition of the Cadillac.

The defendant has had at least a thirteen year history of larcenous behavior.  His

uncharged criminal conduct plainly is indicative of a propensity for future criminal behavior.

*See Gayle*, 389 F.3d at 410.  On that basis and because of the consolidation of Cartelli's cases for

sentencing, the Court should depart horizontally to Criminal History Category II with an

imprisonment range of 30-37 months and sentence the defendant to the top of that guideline range.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


JAMES K. FILAN, JR.
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO.  ct15565
915 LAFAYETTE BOULEVARD
BRIDGEPORT, CT 06604
(203) 696-3000

For:     CALVIN B. KURIMAI
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO.  ct07223
157 CHURCH STREET
NEW HAVEN, CONNECTICUT 06510
(203) 821-3700

On Memorandum:

Elizabeth G. Wright
Law Student Intern

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been mailed to the following counsel of record on this 25th day of February, 2005, to:

Jonathan J. Einhorn, Esq.
412 Orange Street
New Haven, CT 06511

_____
JAMES K. FILAN, JR.
ASSISTANT UNITED STATES ATTORNEY

For:    CALVIN B. KURIMAI
        ASSISTANT UNITED STATES ATTORNEY